UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ROBERT E. WHITE, JR.**,

    **Plaintiff,**

v.                                               Case No. 8:05-CV-1444-T-30EAJ

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

    **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Section 405(g) et seq., to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying DIB and SSI benefits.

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

**A.**    **Standard of Review**

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g)(2003). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to

the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814, F.2d 585, 588 (11th Cir. 1987).

**B.    Factual Background**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on January 23, 2001, claiming an onset of disability beginning August 11, 1997.[1]  (T 66-68)  Plaintiff's application was denied initially, upon reconsideration, and by the Administrative Law Judge (ALJ) in a decision issued on March 26, 2004.  (T 15-23)  The Appeals Council declined to review the ALJ decision (T 5-8), making the ALJ's decision the final decision of the Commissioner.

The ALJ found that Plaintiff was not eligible for DIB benefits because she was not disabled at any time through the ALJ's decision on March 26, 2004.  (T 22)  Disability benefits were denied. (T 23)  Plaintiff filed a timely petition for judicial review of the Commissioner's denial of benefits. Plaintiff has exhausted all administrative remedies and the Commissioner's decision is ripe for review under the Act.

---

[1] Plaintiff previously applied for disability benefits in an application dated September 9, 1997. (T 62-65)  This application was denied at the initial level and Plaintiff did not take further action. (T 38-42)

Plaintiff was 38 years old at the time of the administrative hearing on June 5, 2002.[2] (T 502) Plaintiff attended school through 10th grade and has not received any vocational or specialized training. (T 504) Plaintiff's past relevant work experience consists of work as a laborer and painter. (T 81) Plaintiff asserts that a right leg injury and a learning disability have rendered him unable to work since August 11, 1997. (T 104)

Following the administrative hearing, the ALJ found that Plaintiff had a history of a fractured tibia with reflex sympathetic dystrophy of the lower right extremity, borderline intellectual functioning and dysthymia. (T 19) The ALJ determined that the above impairments are severe, but that Plaintiff's impairments or combination of impairments do not meet or medically equal the impairments listed in Appendix 1, Subpart P of Regulations No. 4. (T 19) The ALJ determined that Plaintiff's psychological impairments are severe. (T 20) The ALJ held that Plaintiff could not perform his past relevant work (T 21), but that he could perform a reduced range of light work activity.[3] (T 20) Specifically, the ALJ noted that Plaintiff is limited to avoiding work with dangerous or moving machinery, climbing, balancing, and driving; further, Plaintiff requires a sit/stand option and a temperature controlled environment. Id. The ALJ also limited the work Plaintiff could perform to simple, repetitive job tasks such as unskilled or low-end semi-skilled tasks. Id.

---

[2]These is some discrepancy regarding the date of the administrative hearing. The ALJ asserts in his opinion that this hearing occurred on June 5, 2003. (T 15) The transcript from the hearing indicates that it occurred either on June 5, 2002 (T 498), June 6, 2002 (T 500), or March 6, 2004 (T 500). However, determining the exact date of the hearing is not necessary for review of this case.

[3]Light work, defined at 20 C.F.R. §§ 404.1567(b), involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Light work may require a good deal of walking or standing, or may involve sitting most of the time with some pushing and pulling of arm or leg controls.

Relying on the testimony of a vocational expert (VE) in response to a hypothetical question which incorporated these limitations, the ALJ concluded that Plaintiff could perform jobs such as small products assembler or final assembler. (T 22)  In reaching the conclusion that Plaintiff had not been under a "disability" since August 11, 1997, the ALJ held that Plaintiff's statements regarding his symptoms and impairments were not wholly credible. (T 20)

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

**C.     Discussion**

Plaintiff argues that the Commissioner erred by: (1) not considering Plaintiff's mental impairments, (2) failing to provide specific rationale for rejecting Plaintiff's testimony, (3) failing to consider side effects from Plaintiff's medications, (4) posing incomplete hypothetical questions to the vocational expert, and (5) making findings that are not supported by substantial evidence. (Dkt. 11 at 3-7).  Defendant maintains that the ALJ's decision that Plaintiff can perform a wide range of light work is supported by substantial evidence. (Dkt. 12 at 3).

**1. Consideration of Mental Impairments**

Plaintiff contends that the ALJ did not follow the proper procedure for evaluating mental impairments as set forth in 20 C.F.R. §404.1520a. (Dkt. 11 at 5).  Defendant argues that the ALJ's opinion includes a detailed discussion of the evidence from Plaintiff's mental examinations, the ALJ's supporting rationale, and his clearly articulated conclusions. (Dkt. 12 at 8).

The ALJ discussed the results of a psychological examination conducted in March 2001 by Steve Kanakis, Psy.D. ("Dr. Kanakis"). (T 17)  Dr. Kanakis indicated that Plaintiff had no evidence of a thought disorder, scored low average in intelligence, and performed well at solving arithmetic

4

problems. Dr. Kanakis reported that Plaintiff's recent and remote memory appeared intact, his attention span was good, and his concentration ability was fair. The ALJ stated that he gave great weight to Dr. Kanakis's evaluation because it is consistent with findings from Plaintiff's mental status examination and with the intensity of treatment sought for this impairment.

The ALJ noted the findings of a consultative psychological evaluation performed in June 2002 by Don DelBeato, Ph.D. ("Dr. DelBeato"). (T 18) Dr. DelBeato reported that Plaintiff's mental status exam revealed "a normal affect," that Plaintiff's remote memory was intact but his recent memory appeared mildly impaired, and that his concentration appeared to be fair. Dr. DelBeato estimated Plaintiff's intelligence to be borderline to low average and his global assessment of functioning to be 55. The ALJ stated that he also accorded Dr. DelBeato's opinions great weight. (T 18)

The ALJ reviewed a consultative psychological evaluation conducted on August 15, 2003 by Karen Moorhead, Ph.D. ("Dr. Moorhead"). Using WAIS-III intelligence testing, Dr. Moorhead considered Plaintiff to be in the Borderline range of functioning. Dr. Moorhead evaluated Plaintiff as having a Verbal I.Q. of 66, a Performance I.Q. of 97, and a Full Scale I.Q. of 78. Dr. Moorhead noted that Plaintiff appeared to have a learning disability related to auditory comprehension and diagnosed Plaintiff with a mixed receptive-expressive language disorder and Borderline Intellectual Functioning. Dr. Moorhead estimated Plaintiff's global assessment of functioning to be 60 and indicated that Plaintiff had "poor ability to complete complex detailed tasks and instructions or demonstrate reliability due to pain, poor sleep and medications." (T 19)

After summarizing this evidence, the ALJ concluded that Plaintiff had borderline intellectual functioning and considered this factor when analyzing whether Plaintiff's impairments were severe.

5

(T 19)  The ALJ discussed Plaintiff's mental impairments in evaluating Plaintiff's residual functional capacity. (T 20) In doing so, the ALJ stated, "Although Dr. Moorhead indicated that the claimant was unable to perform complex detailed tasks, there is no indication that his intellectual impairment and learning disorders preclude him from performing simple or low end semiskilled tasks." (T 20)  After outlining the evidence discussed above, the ALJ concluded that Plaintiff's psychological impairments were "severe." (T 20)

20 C.F.R. §404.1520a governs the Commissioner's evaluation of mental impairments. The Commissioner must first establish whether a claimant has a medically determinable mental impairment. 20 C.F.R. §404.1520a(b)(1). If so, the Commissioner then rates the degree of functional limitation the impairment causes based on the degree to which it interferes with the claimant's ability to function "independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §404.1520a(c)(2). The ALJ's opinion must include "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. §404.1520a(e)(2). By regulation, the ALJ's decision must include a specific finding about the degree of limitation in each of four areas: (1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation. Id.; 20 C.F.R. §404.1520a(c)(3).

If the ALJ fails to address a claimant's condition in one of these areas, the case must be remanded for consideration of the lacking factors and reevaluation of a claimant's residual functional capacity in light of all factors. Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005) (remanding where ALJ failed to analyze the factors of social functioning and prior episodes of decompensation). In this case, the ALJ did not analyze how Plaintiff's mental impairment would

affect the separate activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation as required by regulation. Contrary to Defendant's assertions, when an ALJ's decision lacks consideration of each particular area and, therefore, its impact on residual functional capacity, the court "cannot even evaluate" an argument that such error was harmless. Moore, 405 F.3d at 1214. Thus remand is required to allow the ALJ the opportunity to make specific findings as per the four areas specified by regulation, in compliance with Moore.[4]

### 2. Plaintiff's Testimony

Plaintiff next claims that the ALJ improperly discounted Plaintiff's testimony regarding his symptoms and pain and failed to provide specific reasons for doing so. (Dkt. 11 at 4-5). Plaintiff asserts that the medical evidence supports Plaintiff's testimony about pain and that nothing in the record indicates that this testimony is not credible. Defendant contends that the ALJ throughly considered Plaintiff's pain testimony, cited the relevant regulations, and noted how Plaintiff's testimony is inconsistent with the medical evidence. (Dkt. 12 at 7).

The Eleventh Circuit has established a three-part pain standard to use when evaluating a claimant's subjective complaints of pain. A plaintiff must show: (1) evidence of an underlying medical condition, and either (2) the medical evidence substantiates the severity of the pain from the condition, or (3) that the condition is of sufficient severity that it would be reasonably expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986). This standard is consistent with Social Security regulations which provide that a claimant may establish a disability through subjective testimony of pain if "medical signs or findings show that there is a

---

[4] Although the ALJ did not have the benefit of this ruling at the time of his decision, Moore is now controlling law.

medical condition that could be reasonably expected to produce those symptoms." Elam v. R. R. Ret. Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (citing 20 C.F.R. §§ 404.1529, 416.929).

The ALJ recognized that the assessment of Plaintiff's residual functional capacity must take Plaintiff's symptoms, including pain, into consideration. (T 19) The ALJ discussed Plaintiff's testimony that Plaintiff continued to have chronic right leg pain, that he would miss 3-4 days per week on average due to pain, that he could not stand for more than two hours because of pain and swelling, and that he takes Vicodin for pain. (T 20)

After evaluating the medical evidence and Plaintiff's testimony, the ALJ concluded that Plaintiff's statements concerning his pain and its impact on his ability to work were not wholly credible in light of the record. (T 20) The ALJ stated, "While it is reasonable to expect that the claimant does have some pain, the record does not support a finding that his pain is of such severity as to preclude him from all activity." (T 20)

Although the ALJ did not expressly cite to the Eleventh Circuit's three-part pain standard, he did discuss the applicable regulations (T 19). See Elam, 921 F.2d at 1215 (highlighting consistency between Eleventh Circuit pain standard and regulations). In addition, his findings and discussion indicate that the ALJ was aware of and applied the proper standard. See Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002). Therefore, the only question remaining is whether the ALJ's assessment of Plaintiff's testimony regarding his pain and other restrictions is based on substantial evidence.

The ALJ's evaluation of Plaintiff's pain testimony consists of the following two sentences:

> "While it is reasonable to expect that the claimant does have some pain, the record does not support a finding that his pain is of such severity as to preclude him from all activity. No treating or examining source has indicated that the claimant was completely unable to work."

(T 20) The ALJ does not indicate any other reasons for discrediting Plaintiff's testimony. This analysis of Plaintiff's testimony regarding pain is conclusory and does not provide enough specificity to permit the court to exercise its judicial review function. Compare Allen v. Sullivan, 880 F.2d 1200, 1202-03 (11th Cir. 1989). Remand is therefore necessary for the ALJ to cite specific evidence in the record which supports his credibility analysis of Plaintiff's testimony.

### 3.  Consideration of Side Effects

Plaintiff argues that the ALJ did not properly take into account the side effects of Plaintiff's medications. In summarizing the Plaintiff's testimony, the ALJ stated that Plaintiff takes Vicodin for pain which "makes him drowsy and he has difficulty thinking." (T 20) The ALJ concluded that "the difficulty concentrating due to pain and the side effects of his medication would not be expected to preclude the claimant from performing simple or low end semiskilled tasks." (T 20)

Absent some reference to side effects of medication in the treatment notes, it is not error for the ALJ to discount plaintiff's testimony on the side effects of medication in determining residual functional capacity. Compare MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986) (Commissioner erred in not considering medication side effects where claimant's physician testified that medication would affect claimant's ability to work). Plaintiff does not point to treatment notes by Plaintiff's physicians discussing side effects of Plaintiff's medications. A review of the record reveals only two physician references to side effects of medications: Henry Hanff, M.D. notes that Plaintiff will discontinue the medication Celebrex if side effects develop (T 384), and Joseph Uricchio, Jr., M.D. acknowledges Plaintiff's report that when he had been taking Neurontin it made him forgetful (T 429). These mentions of side effects from Plaintiff's medications do not rise to the level present in MacGregor where the claimant's physician testified that a particular arthritis

medication Plaintiff was then taking would significantly interfere with his ability to work. 786 F.2d at 1054. Here, there is no comparable physician testimony in the record. Thus the ALJ did not err in discounting Plaintiff's testimony as to the side effects of his medications and the ALJ's decision should be affirmed on this issue.

If a case is remanded on certain grounds, it may not be necessary to resolve the remaining issues. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986). Because errors of law necessitate remand on issues one and two, the ALJ's findings on remand may change.[5] Hence review of issues four and five is unnecessary.

**D.    Conclusion**

Accordingly and upon consideration it is **RECOMMENDED** that:

(1)    the decision of the Commissioner be **REVERSED** and the case **REMANDED** for further proceedings and consideration consistent with the foregoing; and

(2)    the Clerk of Court enter final judgment in accordance with 42 U.S.C. § 405(g) as a "sentence

---

[5]Plaintiff also argues that the cross-examination of the VE was "cut short" by the ALJ pending further psychological evaluation and testing of Plaintiff. (Dkt. 11 at 7).

At the close of the Plaintiff's testimony at the administrative hearing, before the ALJ began questioning the VE, the ALJ stated that he was going to order a consultative psychological evaluation principally for I.Q. testing. (T 525) The ALJ continued:

> "For the sake of judicial economy I don't want to go forward at this time with much more testimony because it may very well be moot. . . . I will, however, ask the Vocational Expert one or two questions and I recognize that you have not had an opportunity to fully develop all of the claimant's testimony and if it becomes necessary we'll come back on this issue at a later time."

(T 526) The ALJ then questioned the VE and allowed Plaintiff's counsel to question the VE. (T 526-31) From a transcript of the hearing, it does not appear that the ALJ prevented Plaintiff's counsel from asking the VE any questions. (T 531) However, it is not clear from the record that Plaintiff was provided the opportunity to later comment on the psychological evaluation ordered by the ALJ; this evaluation is in the record (T 469-88). This should be clarified and Plaintiff permitted an opportunity to comment on the report and present additional evidence on this issue on remand.

four" remand and close the file, with each party bearing his own costs and expenses.

**DONE AND ORDERED** in Tampa, Florida on this 17th day of May, 2006.

ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal and a de novo determination by a District Judge. See 28 U.S.C. 636 (b)(1).